IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
NORTHERN DIVISION
No. 2:24-CV-54-BM

| | |
|---|---|
| COROLLA POOL AND SPA INC., | ) |
| Plaintiff, | ) |
| v. | ) **ORDER** |
| COROLLA BRAD LLC and BRADLEY CLARKE MCVAUGH aka BRAD MCVAUGH, | ) |
| Defendants. | ) |

This matter comes before the court on the motion for judgment on the pleadings [DE-14] filed by defendants Corolla Brad LLC and Bradley Clarke McVaugh aka Brad McVaugh (together, "defendants") against plaintiff Corolla Pool and Spa Inc. ("plaintiff"). In support of the motion, defendants filed a memorandum [DE-14-4], an affidavit [DE-14-3], and exhibits [DE-14-1; -2]. Plaintiff filed a response in opposition. [DE-15]. Defendants' motion for judgment on the pleadings [DE-14] has been briefed, the appropriate responses and replies have been filed, or the time for doing so has expired, and, therefore, the motion is ripe for adjudication. For the reasons set forth below, defendants' motion for judgment on the pleadings [DE-14] is DENIED.

## I. BACKGROUND

On October 29, 2024, plaintiff commenced this action by filing a complaint against defendants alleging trademark infringement and unfair competition. [DE-1]. On November 18, 2024, defendants filed an answer to the complaint. [DE-6]. As this matter before the court is a motion for judgment on the pleadings, the court "recount[s] the facts as alleged by [p]laintiff, accepting them as true and drawing all reasonable inferences in [p]laintiff's favor." *Conner v. Cleveland Cnty.*, 22 F.4th 412, 416 (4th Cir. 2022).

Plaintiff provides pool and spa services under the name "Corolla Pool and Spa" in the Outer Banks region of North Carolina, including in the communities of Nags Head, Kitty Hawk, Duck, Southern Shores, and Corolla. [DE-1] at ¶ 16. Plaintiff has continuously done business under the name "Corolla Pool and Spa" since December 2016. *Id.* at ¶ 17. Plaintiff does not allege that "Corolla Pool and Spa" is a federally registered trademark. *See generally* [DE-1]. Since 2016, plaintiff has "advertised its services throughout the Outer Banks region and spent a great deal of time building a positive reputation and referral network in the area." *Id.* at ¶ 34. Plaintiff has "invested substantial time, effort, and financial resources promoting" its business. *Id.* Plaintiff has also used the domain name "corollapoolandspa.com" to "market the business and its services" since January 2017. *Id.* at ¶ 19.

In September 2021, defendants began offering services "identical to those of [p]laintiff in the same geographic territory as [p]laintiff" and operated under the mark "Corolla Pools." *Id.* at ¶ 20. In Spring of 2022, a property management company "informed [p]laintiff of a problem with work assignments being sent to the wrong company due to the confusion with [d]efendants' business." *Id.* at ¶ 21. Plaintiff represents that "throughout the year, several work assignments were mistakenly sent to the wrong pool service." *Id.* at ¶ 21. In Spring of 2023, plaintiff's primary distributor informed plaintiff that defendants were also inquiring about opening an account and suggested that "all parties double check all orders and invoicing to ensure the correct pool service company was being billed and delivered to." *Id.* at ¶ 23. In the Spring and Summer of 2023, as well as the Summer of 2024, plaintiff mistakenly received multiple calls intended for defendants. *Id.* at ¶¶ 25, 26. In July 2024, plaintiff received a work order as well as voicemails intended for defendants. *Id.* at ¶ 27. In August 2024, plaintiff received a package intended for defendants. *Id.*

2

at ¶ 28. Plaintiff contacted defendants several times regarding the confusion between the names of the two businesses. *Id.* at ¶¶ 22, 24, 29.

## II. APPLICABLE LEGAL STANDARDS

A motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c) is subject to the same standard applied to a motion to dismiss made under Rule 12(b)(6). *See Conner*, 22 F.4th at 416. "To survive a motion for judgment on the pleadings, 'a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Id.* at 420 (quoting *Pledger v. Lynch*, 5 F.4th 511, 520 (4th Cir. 2021) (internal quotations marks omitted)). A claim is facially plausible if the plaintiff alleges factual content "that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged" and shows more than "a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Similarly, a motion for judgment on the pleadings should be granted only if "it appears certain that the plaintiff cannot prove any set of facts in support of his claim entitling him to relief." *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999). Ordinarily, the complaint need contain simply "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Yet a complaint is insufficient if it offers merely "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or "naked assertion[s]" without "further factual enhancement." *Iqbal*, 556 U.S. at 678 (alteration in original) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 557 (2007) (internal quotation marks omitted)).

## III. DISCUSSION

Plaintiff asserts three claims against defendants: (1) federal trademark infringement, unfair competition, and false designation of origin pursuant to 15 U.S.C. § 1125(a); (2) North Carolina

3

common law trademark infringement; and (3) unfair and deceptive trade practices. [DE-1] at 7-12. Defendants move for judgment on the pleadings, arguing each claim fails to state a claim upon which relief may be granted as a matter of law. [DE-14] at 1. Each of plaintiff's claims and defendants' related arguments will be addressed in turn.

A. **Federal Trademark Claims**

Plaintiff's first claim alleges "federal trademark infringement and unfair competition under Section 40(A) of the Lanham Act, 15 U.S.C. § 1125(a)." [DE-1] at ¶ 31. Defendants argue that plaintiff's unregistered mark, "Corolla Pool and Spa," is geographically descriptive and does not meet the requirements for protection under the Lanham Act. *See generally* [DE-14-4].

"In order to maintain a cause of action for trademark infringement, a plaintiff must show (1) that 'it has a valid, protectable trademark'; and (2) 'that the defendant's use . . . is likely to cause confusion among consumers.'" *B & J Enters., Ltd. v. Giordano*, 329 Fed. Appx. 411, 416 (4th Cir. 2009) (per curium) (quoting *Lone Star Steakhouse & Saloon, Inc. v. Alpha of Va., Inc.*, 43 F.3d 922, 930 (4th Cir. 1995)). A mark need not be registered to receive protection under the Lanham Act. *Matal v. Tam*, 582 U.S. 218, 225, 137 S. Ct. 1744, 1752, 198 L. Ed. 2d 366 (2017). Yet a mark must be distinctive to qualify for protection. *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 769, 112 S. Ct. 2753, 2757, 120 L. Ed. 2d 615 (1992).

1. **Categorization of the Mark**

A mark is classified as either "'generic,' 'descriptive,' 'suggestive,' or 'arbitrary/fanciful'" and is protected under federal law in accordance with its degree of distinctiveness. *See B & J Enters.*, 329 Fed. Appx. at 417 (quoting *U.S. Search, LLC v. U.S. Search.com Inc.*, 300 F.3d 517, 523 (4th Cir. 2002)).

Evaluating the distinctiveness of generic, suggestive, arbitrary and fanciful marks respectively is fairly straightforward. A generic mark "merely employs the common name of a product or service" and "neither signifies the source of goods nor distinguishes the particular product from other products on the market." *Retail Servs., Inc. v. Freebies Publ'g*, 364 F.3d 535, 538 (4th Cir. 2004) (quotation omitted), *abrogated on other grounds by Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545 (2014). Examples of generic marks include "LITE BEER for light beer, CONVENIENT STORE for convenience stores, and POLO shirts for polo shirts." *See OBX-Stock, Inc. v. Bicast, Inc.*, 558 F.3d 334, 340 (4th Cir. 2009). Unlike distinctive marks, a generic mark is never entitled to trademark protection, as it is the "antithesis of a distinctive mark." *Retail Servs.*, 364 F.3d at 538.

"Suggestive marks connote, without describing, some quality, ingredient, or characteristic of the product." *Sara Lee Corp. v. Kayser-Roth Corp.*, 81 F.3d 455, 464 (4th Cir. 1996). "[I]f [the mark] stands for an idea which requires some operation of the imagination to connect it with the goods, it is suggestive." *Retail Servs.*, 364 F.3d at 539 (quoting *Pizzeria Uno Corp. v. Temple*, 747 F.2d 1522, 1528 (4th Cir. 1984)). The Fourth Circuit has cited "L'EGGS pantyhose and GLASS DOCTOR window repair" as examples of suggestive marks. *OBX-Stock, Inc.*, 558 F.3d at 340. Suggestive marks can be protected "without any showing of secondary meaning." *Retail Servs.*, 364 F.3d at 539 (internal quotations omitted).

Arbitrary marks consist "of words in common usage" that "do not suggest or describe any quality, ingredient, or characteristic of the goods they serve," such as "Tea Rose(R) flour, Camel(R) cigarettes, and Apple(R) computers." *Sara Lee Corp.*, 81 F.3d at 464. "'Fanciful' marks are made-up words that are invented to describe the product or source, such as KODAK or EXXON.'" *OBX-Stock, Inc*, 558 F.3d at 340. "[A]rbitrary, fanciful, and suggestive marks 'are

5

inherently distinctive, and thus receive the greatest protection against infringement.'" *Grayson O Co. v. Agadir Int'l LLC*, 856 F.3d 307, 315 (4th Cir. 2017) (quoting *Sara Lee Corp.*, 81 F.3d at 464).

The consideration of descriptive marks can be less straightforward. A descriptive mark defines a particular characteristic of the product in a way that does not require any exercise of the imagination. *Retail Servs.*, 364 F.3d at 539. A mark is geographically descriptive when it "uses a geographic name to indicate where the goods are grown or manufactured." *See* Geographically Descriptive Trademark, BLACK'S LAW DICTIONARY 1501 (7th ed. 1999); *see also Daesang Corp. v. Rhee Bros., Inc.*, No. AMD 3-551, 2005 U.S. Dist. LEXIS 9066, at *21 (D. Md. May 13, 2005) ("A geographically descriptive term is one in which the primary significance attached to the term is a generally known geographic location."); *Lexington Furniture Indus. v. Lexington Co.*, No. 19-cv-6239 (PKC), 2021 U.S. Dist. LEXIS 55775, at *18-19 (S.D.N.Y. Mar. 23, 2021) ("A geographically descriptive term or phrase is one that 'designates geographical location and would tend to be regarded by buyers as descriptive of the geographic location of origin of the goods or services.'") (quoting *Forschner Grp., Inc. v. Arrow Trading Co. Inc.*, 30 F.3d 348, 353 (2d Cir. 1994)) (internal quotation marks omitted).

"Marks that are merely descriptive[, including geographically descriptive,] are accorded protection only if they have acquired a 'secondary meaning,' that is, if 'in the minds of the public, the primary significance of a product feature or term is to identify the source of the product rather than the product itself.'" *Sara Lee Corp.*, 81 F.3d at 464 (quoting *Dayton Progress Corp. v. Lane Punch Corp.*, 917 F.2d 836, 839 (4th Cir. 1990)); *Resorts of Pinehurst, Inc. v. Pinehurst Nat'l Corp.*, 148 F.3d 417, 421 (4th Cir. 1998). The Fourth Circuit has noted that "'Coca-Cola® is probably the paradigm of a descriptive mark that has acquired a secondary meaning,' . . . because

6

Case 2:24-cv-00054-BM    Document 18    Filed 09/17/25    Page 6 of 16

it went from merely describing a drink made from coca leaves and cola nut to signifying 'to most persons . . . [a] familiar product to be had everywhere.'" *Variety Stores, Inc. v. Wal-Mart Stores, Inc.*, 888 F.3d 651, 661 (4th Cir. 2018) (alteration in original) (citations omitted).

Defendants contend that (i) "Corolla Pool and Spa" is "primarily geographically descriptive and generic, geographically deceptively misdescriptive, and fails to meet the requirements for trademark protection" and (ii) plaintiff "has not sufficiently pleaded facts to establish secondary meaning." [DE-14] at 1. Defendants reason that plaintiff's mark is descriptive because "'Corolla' refers to a geographic location . . . and 'Pool' and 'Spa' are descriptive of the services provided." [DE-14-4] at 6-7. Plaintiff, citing *Lone Star*, 43 F.3d at 936, counters that "Corolla Pool and Spa" is suggestive because the mark is a geographical term combined with a descriptive term. [DE-15] at 11 (citing *Lone Star*, 43 F.3d at 936).

The court finds that plaintiff's mark is geographically descriptive, as it refers to one of the communities plaintiff serves and in which it does business. *See* [DE-1] at ¶ 33. Plaintiff's citation to *Lone Star* in support of its argument that the mark is suggestive is inapposite here. First, *Lone Star* involved a trademark that was the court had found to be incontestable because it (i) was registered with the Patent and Trademark Office and (ii) had been used continuously and unchallenged for five years. 43 F.3d at 930. The Fourth Circuit in *Lone Star* held courts "should give due respect to the fact that the Patent and Trademark Office did not require proof of secondary meaning when the Office granted [plaintiff] a registration for 'Lone Star Cafe'" as part of its reasoning for categorizing the mark as suggestive, noting that "other courts have held that incontestable marks are 'conclusively presumed to be nondescriptive or to have acquired

7

secondary meaning.'"[1]  43 F.3d at 936 (quoting *Soweco, Inc. v. Shell Oil Co.*, 617 F.2d 1178, 1184 (5th Cir. 1980)).  Similarly, in *Resorts of Pinehurst, Inc.*, the mark in question was registered, and the court considered that "the Patent and Trademark Office did not require proof of secondary meaning, as it must when presented with a descriptive mark."  148 F.3d 417, 421 (4th Cir. 1998). The presence of trademark registration and a finding that the Patent and Trademark Office did not require proof of secondary meaning is clearly missing in the instant case.  *See generally* [DE-15]. Second, the Fourth Circuit has found other combinations of geographical and descriptive terms such as "Boston Beer," "Bank of America," and "Miss U.S.A." to be descriptive.  *OBX-Stock, Inc.*, 558 F.3d 334, 340 (4th Cir. 2009).  Accordingly, even drawing all reasonable inferences in plaintiff's favor, there is no basis to find "Corolla Pool and Spa" to be suggestive, and the court finds that the term "Corolla" is geographically descriptive.

At the same time, defendants' argument that the mark is "geographically deceptively misdescriptive and therefore unprotectable" is also without merit.  *See* [DE-14-4] at 11-12. Specifically, defendants argue that plaintiff's mark is not protectable because it is "geographically deceptively misdescriptive" as "[p]laintiff operates from a [place other than Corolla] – Southern Shore, Dare County." [DE-14-4] at 11-12 No. AMD 03-551, 2005 U.S. Dist. LEXIS 9066 at *32-33 (D. Md. May 13, 2005)).  Defendants cite *Daesang Corp. v. Rhee Bros., Inc.* in support of their position.  *See* [DE-14-4] at 12 (citing No. AMD 03-551, 2005 U.S. Dist. LEXIS 9066 at *32-33 (D. Md. May 13, 2005)).  In *Daesang Corp.*, the court found the defendant deceptively marketed its chili paste as originating from a region in Korea known for high quality chili paste.  2005 U.S. Dist. LEXIS 9066 at *34.  In the instant case, plaintiff provides services in Corolla as well as

---

[1] The Fourth Circuit has clarified that incontestability does not "establish the statutory requirement of likelihood of confusion."  *Synergistic Int'l, LLC v. Korman*, 470 F.3d 162, 170 (4th Cir. 2006) (citing *Lone Star*, 43 F.3d at 933).

8

surrounding communities. [DE-1] at ¶ 16. The court is not persuaded by defendants' argument that a business that bears the name of a community it serves is misleading the public as to the origin of its services, and defendants cite no apposite caselaw in support of that proposition.

Even if the court found that plaintiff's mark deceives consumers, that deception must be "a material factor in the purchasing decision [of a consumer]." *Daesang Corp.*, No. AMD 03-551, 2005 U.S. Dist. LEXIS 9066 at *32-33; 2 J. THOMAS MCCARTHY, MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION §14:32.5 ("[T]he misrepresentation was a material factor in the consumer's decision to purchase the goods [or services]."). Defendants argue the "misrepresentation is material to consumer decisions because [p]laintiff uses the geographic association with Corolla, a desirable Outer Banks destination, as a marketing strategy to attract consumers." [DE-14-4] at 12. While the court recognizes that Corolla may be considered "a desirable Outer Banks destination" for recreational purposes, defendants fail to explain how the name would attract consumers in the context of the service plaintiff offers: pool and spa maintenance, cleaning, and repair. [DE-1] at 1. The court credits plaintiff's argument that "[w]hile there are surely amazing pool cleaners in Corolla, the town is not renowned for this." [DE-15] at 12. Defendants do not argue consumers associate pool maintenance services originating from Corolla as being of higher quality, more dependable, or otherwise superior. Plaintiff's allegation that it "has advertised its services throughout the Outer Banks region and spent a great deal of time building a positive reputation and referral network in the area" does not change this analysis. [DE-1] at ¶ 34. Defendants' argument fails on both the elements of deception and materiality.

    2.    **Secondary Meaning**

Because plaintiff's mark is a geographically descriptive term, the court now turns to the question of whether the mark has acquired secondary meaning. "Secondary meaning is the

9

consuming public's understanding that the mark, when used in context, refers, not to what the descriptive word ordinarily describes, but to the particular business that the mark is meant to identify." *Sara Lee Corp.*, 81 F.3d at 464. "[S]econdary meaning has been established in a geographically descriptive mark where the mark no longer causes the public to associate the goods with a particular place, but to associate the goods with a particular source." *Resorts of Pinehurst, Inc.*, 148 F.3d at 421 (quoting *Bos. Beer Co. Ltd. P'ship v. Slesar Bros. Brewing Co., Inc.*, 9 F.3d 175, 181 (1st Cir. 1993)). "[P]laintiff has the burden to show secondary meaning (1) in the defendant's trade area and (2) *prior* to the time when the defendant entered the market." *Perini Corp. v. Perini Const., Inc.*, 915 F.2d 121, 125–26 (4th Cir. 1990) (emphasis added) (citing *N. Hess' Sons, Inc. v. Hess Apparel, Inc.*, 738 F.2d 1412, 1413 (4th Cir. 1984) (per curium)). The Fourth Circuit considers six factors ("the *Perini* factors") in determining whether a mark has acquired a secondary meaning: "(1) plaintiff's advertising expenditures; (2) consumer studies linking the mark to a source; (3) the plaintiff's record of sales success; (4) unsolicited media coverage of the plaintiff's business; (5) attempts to plagiarize the mark; and (6) the length and exclusivity of the plaintiff's use of the mark." *B & J Enters.*, 329 Fed. Appx. at 417 (citing *Perini Corp.*, 915 F.2d at 125). "[N]one of the six factors is necessarily determinative of secondary meaning, and all of them need not be favorable for the plaintiff to prevail." *Id.* (citing *Perini Corp.*, 915 F.2d at 125-26).

      Defendants argue plaintiff has failed to allege secondary meaning in its complaint, because it "fails to allege facts concerning any consumer surveys, advertising expenditures, sales data, media coverage, or the like, linking the mark with [p]laintiff's business," all assertions of secondary meaning in the complaint are conclusory under *Twombly* and *Iqbal*. *See* [DE-14-4] at 7, 10. Defendants also contend that plaintiff has used "inconsistent branding." *Id.* at 10.

Defendants note that the name "Corolla" is widely used in the names of North Carolina businesses, and the "widespread use of a geographic term in business names undermines distinctiveness and makes it more difficult to establish secondary meaning." [DE-14-4] at 6, 8 (citing *OBX-Stock*, 558 F.3d at 341). Defendants also argue "the complaint does not and cannot sufficiently plead exclusivity of use of the mark . . . which is critical for demonstrating secondary meaning." [DE-14-4] at 7 (citing *Pinehurst*, 148 F.3d at 421-22).

Plaintiff argues its mark has acquired secondary meaning. [DE-15] at 10-11, 11-12. Plaintiff points to its allegations the "mark has been in continuous use for many years," plaintiff "has built significant recognition and goodwill in the mark," "specific claims of actual confusion," and "efforts that go into promoting the mark." [DE-15] at 9, 11, 12. Plaintiff also argues its complaint "includes specific claims of acquired secondary meaning, and addresses factors used by courts when determining secondary meaning, such as public association of the mark with a particular source." [DE-15] at 9.

As an initial matter, the court must determine whether it may consider secondary meaning on a motion for judgment on the pleadings. *See* [DE-15] at 9,10. District courts in this circuit diverge on whether secondary meaning should be considered at the pleading stage. *See, e.g.*, *Stafford Urgent Care, Inc. v. Garrisonville Urgent Care, P.C.*, 224 F. Supp. 2d 1062, 1065 (E.D. Va. 2002) ("The question of secondary meaning is a fact-based analysis . . . Because this factual inquiry is not appropriately decided on a threshold dismissal motion, defendants' motion to dismiss for failure to state a claim must be denied."); *For Life Prods., LLC v. Universal Cos.*, No. 1:20CV00016, 2021 U.S. Dist. LEXIS 131188, at *16-17 (W.D. Va. July 14, 2021) ("[W]hether [the mark] has attained secondary meaning [is a] factual [question]. It would be inappropriate to determine these issues at the motion to dismiss stage."); *but see Macher v. Netflix, Inc.*, 684 F.

11

Supp. 3d 509, 516 (W.D. Va. July 27, 2023) (dismissing trademark claims because "nothing in [plaintiff's] complaint suggests that its [mark] has obtained 'secondary meaning,' nor does he allege that it has."); *Potomac Conf. Corp v. Takoma Acad. Alumni Ass'n*, 2 F. Supp. 3d 758, 770 (D. Md. 2014) (denying a motion to dismiss because "[p]laintiff's complaint [pleaded] facts rendering it plausible . . . that [the mark had] acquired secondary meaning."). This court has previously dismissed a trademark claim at the pleading stage based on a finding that the mark "'Old South' is neither distinctive nor has acquired a secondary meaning." *See Old South Apparel, LLC v. JEB Designs, Inc.*, 272 F. Supp. 3d 734, 739 (E.D.N.C. 2017).

The court notes that in the above cited case where a court found an absence of secondary meaning at the pleading stage, the deficiencies in the pleading were glaring. *See Macher, Inc.*, 684 F. Supp. 3d at 516 (noting that the plaintiff does not even allege that his mark has secondary meaning); *Old South Apparel, LLC*, 272 F. Supp. 3d at 738-39 (noting that "plaintiffs 'emphatically disagree' with the idea that 'Old South' and 'Old South Apparel'[the latter being the term plaintiffs had registered] are two different terms, without explaining how that could be the case."). Accordingly, while the court will consider secondary meaning here, it notes the relatively low bar that plaintiff must overcome at this state of the proceedings given the fact-specific nature of the inquiry.[2]

Plaintiff alleges that it has continuously done business under the name "Corolla Pool and Spa" since December 2016. [DE-1] at ¶ 17. Plaintiff also claims that its "mark has developed

---

[2] Plaintiff alleges several instances where persons have mistakenly contacted plaintiff's business believing it to be defendants' business. [DE-1] at ¶¶ 21, 25, 26, 27. The court does not consider these examples of confusion with respect to the secondary meaning inquiry, because these events happened after defendants began using the name "Corolla Pools" in the same geographical market as plaintiff and therefore does not establish a secondary meaning prior to defendants entering the market. *See id.* at ¶¶ 21, 25, 26, 27, 28. The court does, however, consider these events when evaluating the likelihood of confusion discussed below.

12

secondary meaning and consumers . . . associate [plaintiff's mark] with [p]laintiff, not with the location or services themselves," and "relevant consumers identify [plaintiff's mark with the plaintiff]." [DE-1] at ¶¶ 2, 37.  Plaintiff also alleges that it "has advertised its services throughout the Outer Banks region and spent a great deal of time building a positive reputation and referral network in the area" and "[p]laintiff has invested substantial time, effort, and financial resources promoting its . . . mark in connection with the marketing and sale of its services . . ." [DE-1] at ¶ 34.

Plaintiff has pleaded just enough with respect to secondary meaning "to nudge[] [its] claims across the line from conceivable to plausible." *Cf. Twombly*, 550 U.S. at 570, 127 S. Ct. at 1974.

Turning to likelihood of confusion, the Fourth Circuit has identified seven factors to consider in this inquiry:

> (1) the strength or distinctiveness of the [plaintiff's] mark;
> (2) the similarity of the two marks;
> (3) the similarity of the goods and services that the marks identify;
> (4) the similarity of the facilities that the two parties use in their businesses;
> (5) the similarity of the advertising the two parties use;
> (6) the defendant's intent; and
> (7) actual confusion.

*Synergistic Int'l, LLC*, 470 F.3d at 170-71 (alteration in original) (citing *Lone Star*, 43 F.3d at 933).

The court does not perceive plaintiff's mark to be particularly strong.  At the same time, there is a strong degree of similarity between the parties' two marks and the goods and services they identify, specifically pool maintenance services.  As both businesses appear to primarily serve their customers in their customer's respective communities rather than at a business office (*see* [DE-1] at ¶¶ 16, 20), the facilities that both parties use is not comparatively important for the instant analysis.  On advertising, plaintiff alleges that it receives many customers through word of mouth, which lessens the significance of the parties' respective logos.  Finally, there have been

13

multiple allegations, as discussed above, of actual confusion, which sufficiently alleges a likelihood of confusion at the instant stage of proceedings.

With respect to defendant's attachments listing other businesses named after Corolla, the court agrees with plaintiff that such examples do not undermine plaintiff's claim as plaintiff does not seek protection of the name "Corolla" but rather "Corolla Pool and Spa."[3] *See* [DE-15] at 10.

The court makes no findings on whether plaintiff's Lanham Act claim will ultimately prevail. Yet the court finds that plaintiff has sufficiently alleged such a claim to survive defendant's motion for judgment on the pleadings. *See Robertson v. Sea Pines Real Est. Companies*, Inc., 679 F.3d 278, 291 (4th Cir. 2012) (noting that a plaintiff need not forecast evidence necessary to prove a claim, but must allege facts sufficient to state a claim).

**B.    North Carolina State Law Claims**

The court has supplemental jurisdiction over plaintiff's North Carolina state law claims under 28 U.S.C. § 1367, because plaintiff's federal and state law claims "derive from a common nucleus of operative fact." *United Mine Workers v. Gibbs*, 383 U.S. 715, 725 (1966).

**1.    North Carolina Common Law Trademark Infringement**

Plaintiff brings a claim for trademark infringement under North Carolina common law. "[T]he tests for trademark infringement . . . under [federal law] are essentially the same as . . . under North Carolina common law." *Ga. Pac. Consumer Prods., LP v. Von Drehle Corp.*, 618 F.3d 441, 449 (4th Cir. 2010). Other federal district courts in North Carolina have found that the disposition of a North Carolina state law trademark claim has generally followed the disposition of the federal trademark claim. *See e.g. Dmarcian, Inc. v. DMARC Advisor BV*, No. 1:21-cv-

---

[3] Plaintiff argues that defendants' exhibits are inadmissible at this stage of the proceedings. *See* [DE-15] at 6-7. As the court would deny defendants' instant motion whether or not it considers such exhibits, the court need not evaluate this argument separately.

00067-MR, 2024 U.S. Dist. LEXIS 79849 at *41 (W.D.N.C. May 1, 2024) (finding that "dmarcian's common law trademark infringement claim essentially rises and falls with its Lanham Act claims"); *see also Herrmann Int'l, Inc. v. Herrmann Int'l Eur.*, No. 1:17-cv-00073-MR, 2021 U.S. Dist. LEXIS 42277 at *25, 30 (W.D.N.C. Mar. 6, 2021); *Mobile Tech, Inc. v. Invue Sec. Prods.*, No. 3:18-CV-00052-RJC-DSC, 2019 U.S. Dist. LEXIS 114500 at *7 (W.D.N.C. June 21, 2019), *adopted by* 2019 U.S. Dist. LEXIS 113569 (W.D.N.C. July 9, 2019). Here, the court finds that plaintiff's North Carolina common law trademark infringement claim states a claim for the same reasons provided above with respect to his federal trademark infringement claim. Accordingly, defendant's motion for judgment on the pleadings with respect to plaintiff's North Carolina common law trademark infringement claim is DENIED.

### 2. North Carolina Unfair and Deceptive Trade Practices

Plaintiff brings a claim for unfair and deceptive trade practices under North Carolina General Statute §75-1.1. [DE-1] at ¶54. "To establish a *prima facie* claim for unfair trade practices under North Carolina General Statutes § 75–1.1, the plaintiff must show that the defendant committed an unfair or deceptive act, that affected commerce and proximately injured the plaintiff." *Microsoft Corp. v. Computer Serv. & Repair, Inc.*, 312 F. Supp. 2d 779, 785 (E.D.N.C. 2004) (citing *Pleasant Valley Promenade v. Lechmere, Inc.*, 120 N.C.App. 650, 464 S.E.2d 47 (1995)). "North Carolina common law of unfair competition in the context of trademarks and tradenames is similar to the federal law of trademark infringement." *Polo Fashions, Inc. v. Craftex, Inc.*, 816 F.2d 145, 148 (4th Cir. 1987). Based on the similarities of the claims, federal district courts in North Carolina have generally found that the disposition of a plaintiff's North Carolina unfair competition claims will largely follow the disposition of their federal trademark claims. *See Microsoft Corp.*, 312 F.Supp.2d at 785 ("The undisputed facts which support the

15

federal claims also support a finding of liability as to the state statutory claim [of unfair and deceptive trade practice]."); *Sigma Gamma Rho Sorority, Inc. v. Seven Pearls Found., Inc.*, No. 5:23-CV-128-BO-KS, 2023 U.S. Dist. LEXIS 183011 at *5 (E.D.N.C. Oct. 11, 2023); *Mobile Tech, Inc. v. Invue Sec. Prods.*, No. 3:18-CV-00052-RJC-DSC, 2019 U.S. Dist. LEXIS 114500 at *7 (W.D.N.C. June 21, 2019), *adopted by* 2019 U.S. Dist. LEXIS 113569 (W.D.N.C. July 9, 2019); *Vill. Tavern, Inc. v. Catbird Hosp., LLC*, No. 1:21-cv-00228-MR, 2022 U.S. Dist. LEXIS 145888 at *18-19 (W.D.N.C. Aug. 16, 2022).

The court has found that plaintiff has adequately alleged trademark infringement for the reasons discussed above. Trademark infringement constitutes a deceptive or unfair act, *Microsoft Corp.*, 312 F.Supp.2d at 785, and, based on the customer confusion alleged herein, this act affected commerce. Accordingly, defendant's motion for judgment on the pleadings with respect to plaintiff's North Carolina North Carolina Unfair and deceptive trades practices claim is DENIED.

## IV. CONCLUSION

For the foregoing reasons, defendants' motion for judgment on the pleadings [DE-14] is DENIED.

As previously ordered by the court [DE-17], within fourteen (14) days of the date of the instant order, counsel for plaintiff and defendants shall confer and file a joint status report advising the court of the parties' position(s) regarding further scheduling in this matter.

SO ORDERED, this 17th day of September 2025.

_____
Brian S. Meyers
United States Magistrate Judge